Thank you, Your Honors. Thank you very much, counsel. That was an excellent argument. Thank you, Your Honors. Anyway, all right, we will next take up Roy v. Laborer's Local 737. Mr. Crispin? I think you're muted. Mr. Crispin? Maybe that's working. I'm on the telephone, so it's a little different. It's working now, isn't it? Good. Thank you. Thank you. May it please, Corey. Craig Crispin on behalf of Plaintiff Jack Roy, Plaintiff Appellant. I'm going to attempt to reserve two minutes for rebuttal at the end. This is a employment discrimination case. Virtually all such cases are tried and rely on circumstantial indirect evidence of discrimination. A jury is entitled to look at multiple pieces of evidence, comments, statements, circumstances, and they put that together and determine whether or not the plaintiff has established the requisite proof of discrimination. In doing so, there's some very basic principles the Supreme Court has imposed on that process in terms of summary judgment. One is, and the critical cases, I think, are Reeves v. Sanderson-Plumbing and Clark County School District v. Bradeen. Three basic fundamental things. Number one, all favorable inferences are given to the non-moving party. The court is to consider the record as a whole, not individual pieces of the record. And then finally, the court is to disregard evidence favorable to the moving party that the jury is not required to believe. Here, in this case, the judge, the district judge, magistrate, and the district judge disregarded a substantial body of circumstantial evidence that would provide a basis for a reasonable jury to determine that discrimination has occurred. It's included repeated comments over a two-year period, references by the COVR, defendant COVR, the individual who orchestrated this termination, introducing Mr. Roy as the old guy or old guy, even to the extent that Mr. Roy objected and continued and persisted in doing so. Also, Mr. COVR told Mr. Roy that he was being replaced in a role as recording secretary because he liked to, allegedly, Mr. Roy liked to write on paper and they were moving to computers. That's an ageist assumption. COVR also stood by as another union official on the executive board quipped, as they were shoveling snow, watch out, he's getting old, when Roy slipped on the ice. COVR stood by, did nothing. COVR and other union officials repeatedly, constantly, talked about getting younger guys into the union. The executive board member, Greg Held, said to Mr. Roy directly, you're getting old, when are you going to retire? And then finally, this is something the district court failed to even mention, was the substantial evidence determination by the Oregon Bureau of Labor. Now, that in itself, of course, is not sufficient to create an issue of fact, but as Plummer described it, it's a highly probative evaluation of an individual's discrimination complaint. And as other evidence, it's part of the body of evidence that the jury is entitled to consider. What do you do about the reason given for terminating him, which had to do with a violation, a pretty serious one, of the union rules on not taking an item of value from a contractor? I mean, and that was obviously appealed up through the union process, and so there was quite a bit of due process associated with that ultimate finding. And the termination came on the heels of the union discovering that improper conduct. Well, Your Honor, I would thank you for the question. I take issue with the phrase due process. This was a nine-minute hearing, nine-minute hearing, in which Culver, who had already orchestrated the decision and made the preliminary decision, advocated for his decision. He participated in the deliberations by the executive board after this nine-minute proceeding, so-called hearing. There's no due process there. He was out there making sure that the result of this was what he wanted, which is what he had already proposed. Second, when it goes up to this national board, it's important to note that the national board did not affirm on a substantive basis what it did. It said, okay, we're going to affirm because we think that Culver had the right to do what he did. In other words, because Jack Roy was an employee at will, we're not going to overturn the decision. Employment at will does not trump discrimination statutes, and so neither of those really addresses anything. It's relevant that the purported violation, it's important to note that even though in the defense briefing they repeatedly say things like it's undisputed that he did this. Well, it is disputed. That's just plain false. It's disputed that he did exactly what they accused him of doing. They fired him for very specific reasons. They fired him for, let me get the language. They fired him for taking an air conditioning unit from a contractor for his personal use on the job site in view of other union members. That was the allegation. That's what they claimed that they fired him for. None of that's true. At least there's a jury question. The evidence is undisputed that he was not on the job site when he took this air conditioning, not from the superintendent of the job site, but from his son who lawfully owed it. His son was a worker on this job site. The superintendent testified, and that's in the record, that he gave it to the son. The son then made the decision that he wanted to loan it, lend it to the union secretary. So he arranged for his dad, Jack Roy, to come get it off the job site, transport it to the union secretary. So didn't the union accept all those facts and say even if those facts were true, the fact that the timing of it made it and that the fact that it was in front of other union workers that the inference would be that it was some sort of gift? Well, it was not in front of others. There's no evidence at all that any other union member saw Mr. Roy. Well, it was on a job site. No, it wasn't. It was not. The record does not support that it was on the job site when Mr. Roy, his son, provided him the air conditioning unit to put back in his truck. The evidence, the undisputed evidence, is that it was off the job site. Well, like around the block though, right? Because he talked to the contractor about how to operate the AC unit, right? So he was on the job site. He was. He did not take – what they accused him of was very specific. None of those things are borne out by the record despite what the union tries to say. They're trying to spin a jury argument. I agree with that. That's what they would argue to the jury. I'm going to go in there and I'm going to tell them that what the union claimed happened did not happen. Now, it might be close, and they're trying to snowball it. They're kind of trying to shotgun and say this happened even though it didn't. Well, you look at a pretext question. This is not horseshoes. I don't know if that's the right analogy or not, but it's – when you're looking at pretext, if they posit up reasons that then turn out to be false, turn out to be incomplete, turn out to be not quite right, which here it's not even a matter of not quite right. Their specific allegations just don't exist. Then you've got to question whether that's a real reason. When you put it in context with these repeated comments about other people, about age, when you look at the very people who were on this so-called hearing also engaged in exactly the same – no, that's not true – engaged in the very conduct that they accused Mr. Roy of, and the evidence is they admitted it, that in one case the guy, I think it was Held or Moore, one of the two, admitted that he took this lead and it was so extensive from – that it needed a forklift, and he took it and he used it for his personal use. He made fish weights for it. The other one that he took, Moore or Held, whichever the other way was, took a product directly from a job site again, and neither one of them was disciplined. They also were the very people who were sitting on this so-called board hearing and – Counsel, is it true that if a union member takes a gift from a contractor, it could subject the union to criminal liability? They claim that. I don't – I'm not a criminal lawyer. I did not make a determination whether that's actually the case. Okay, got it. I mean the one thing that does seem – it does seem a minor infraction. He got a pretty severe punishment, but I'm not a labor lawyer either. And that is the argument. That is the – that's one of the arguments that I will make to the jury. You've got to look at all of these factors, every one of these factors together. Put them together, cumulative. Don't ignore one. Don't put one up and say, hey, that's weak evidence, as the district court said here. That's weak. We're going to totally disregard it. They're going to take another one and say, Mr. Roy could not identify the specific date and time and place where this happened. Therefore, we're going to disregard that. These comments were stray comments, even though they were made by the person who orchestrated the termination and repeatedly made over a course of two years. The district court just set up these dominoes, and then each one of them gave some reasons why I don't like that evidence, I'm going to get rid of it. And instead of looking at it cumulatively and looking at whether a reasonable jury on the basis of all of this evidence in the record and on the basis of a trial in which all of it is fleshed out and presented as a whole to make a decision, there is enough on this record for a reasonable jury to conclude that discrimination occurred. How do you get around the fact that he was replaced by someone that was only 40 years younger than him? Four years. Well, he... four years. The primosthesia case, defendants have argued that there's only a single primosthesia case that requires a replacement. Well, that's not true. The law talks about circumstances in which it doesn't fit, and I can't remember the exact language here. But in any event, and we cited in the briefing, the other primosthesia element where the employer continues to require the functions, and in this case, it's undisputed. In fact, in the defendant's briefing, they flat out say it, that the duties continue to be needed, that they were distributed to other people in the organization. That meets the primosthesia case, primosthesia standard, and we brief that in the brief. How do we square your argument with the fact that Mr. Roy was promoted just recently to a lead organizer position with a $10,000 pay increase? That very well is something that they can argue to a jury. It's a factor. It's one of multiple factors. That's the problem. You can't take pieces out of isolation. Like the district court here, it bought the arguments, the jury arguments that defendants were making. The district court said, okay, this repeated comments about getting younger people, that might have meant something else. Well, and then the district court went ahead and said, okay, well, because it might have meant something else, we're going to disregard it altogether. Well, it also might have meant exactly what it said, that there's a preference for younger people. In other circumstances, the district court said similar things, just accepted the argument that was made by defendant and used that argument, and that demonstrates that the district court was not following the law and providing inferences most favorable to the plaintiff or non-moving party and instead giving those inferences over to the moving party. All right. Do you want to save the rest of your time for rebuttal? I do. Thank you. Ms. Yen. Thank you, Your Honors. May it please the court, Anne Yen on behalf of the defendants, Zachary Culver and Laborers Local 737. From the defendant's perspective, this is a straightforward case, and I believe from the questions that the justices asked, it does appear as if the justices have reviewed the district court's decision carefully, as well as the records supporting that decision, and the district court was right. The district court stated that following Ninth Circuit precedent that evidence of pretext has to be specific and substantial, and there was no evidence sufficient to raise a triable question of fact in this matter. The business manager, Zachary Culver, decided to dismiss Mr. Roy because he had accepted an item of value from a job site, which was against both union policy and against the law, and it reflected badly upon the union. And as you have noticed, and as the district court correctly noticed, it was by plaintiff's own admission when he had his internal union trial board hearing that, yes, he got it from the job site, and he spoke with the superintendent of the contractor. The superintendent of the contractor showed him how to use it right there at the job site, and so it's clear that he got the item from the job site. However he wants to spin it, I understand that Mr. Roy may feel subjectively that what he did wasn't wrong, but that doesn't raise a triable question as to whether Mr. Culver, as the decision maker, could have sincerely had that reason for the dismissal of employment. And as you noticed, that decision did follow closely upon the conduct for which defendants say the plaintiff was terminated. Whereas the prior year, the same person, Zachary Culver, had recommended that Mr. Roy be promoted with an increase in pay, which demonstrates that Mr. Culver did not have some kind of animus against Mr. Roy on the basis of his age. And while plaintiff emphasized... the union worker takes something of value from a contractor? If it's a union official or a union representative, such as Mr. Roy was in his position as the lead organizer, it does expose the union to prosecution, yes. And I think that the trial board of the National Union, as I believe that the justices have noticed, the trial board of the National Union explains, look, if we accept the plaintiff's account of exactly how it happened, that supposedly the contractor gave the air conditioning unit to Dillon Roy, and then at the same time Dillon Roy then lent it to a plaintiff, they said, let's accept your account of what happened or how it happened. Nevertheless, the conduct could easily have sent the wrong message to our members and the contractor. This is at SCR 7, paragraph 20 of their decision. And they did look at the facts. They looked at plaintiff's account of the facts, and they explained, look, it doesn't make a difference because it's still accepting Brother Roy's argument that the heating unit first went to his son. The undisputed facts are that originated that same day from a signatory contractor. And it makes little difference whether the unit was placed into his son's truck and then transferred to Brother Roy's truck. So it could easily have been construed as a single transaction, such that it could have been prohibited by federal law. And so we believe that the evidence that demonstrates that the reason given was the actual reason, and there is not sufficient evidence in the record of any question of pretext. And although plaintiff has pointed to some anecdotes about something that happened in the past with predecessor unions that were different locals under different management, not under Zachary Culver's management, at some unstated point in the past, that evidence simply doesn't show that in plaintiff's case, the dismissal could have been motivated by age discrimination. We're not talking about the same decision makers, and we're not talking about even the same local. So that sort of anecdotal ambiguous evidence does not constitute substantial specific evidence of pretext. And the district court's decision was quite correct. And although plaintiff says that, well, we don't have to prove that the employee was replaced by someone substantially younger, it's part of the analysis of whether the plaintiff has actually made a prime motivation case. And in this case, since it wasn't a layoff, it was a dismissal for the reasons stated that the plaintiff had engaged in conduct that Mr. Culver, as the business manager, found fault with, the plaintiff has to provide some evidence that actually raises an inference of age discrimination as opposed to some innocuous reason or a just reason or a stated reason. And in this case, there just isn't any prime motivation case because the work that plaintiff was doing was simply reassigned to someone who was substantially the same age as the plaintiff was, and unlike a layoff situation where there's an inference that perhaps the layoff was not actually the correct reason because of the fact that the work still kept going on or that there wasn't a lack of work or lack of funds for a plaintiff's position, in this case, that inference doesn't result from the fact that the plaintiff was dismissed for the reason of his conduct and then his work was reassigned. Naturally, you have to reassign the work that the employee was doing if that work still exists, and there's nothing about that that raises any sort of inference of age discrimination. And, in fact, it was redirected towards someone who was approximately the same age as plaintiff. So we believe that plaintiff didn't even make his prime motivation case, but even if one assumes, as the district court did, that he could make a prime motivation case, there certainly was no specific substantial evidence of pretext sufficient to survive summary judgment. So the district court's decision was correct. If the justices have any questions for me, I would be happy to address them at this time. All right. Thank you, counsel. Mr. Crispin? I think you're still on mute. Thank you. I noted one very interesting word by counsel's argument where she talked about evidence being ambiguous. Well, exactly what ambiguous means is it's subject to two different interpretations. And if you rely upon the argument that because it's ambiguous, it cannot be evidence in support of Mr. Roy's case, then it's directly contrary to the obligation to not give the inferences to the moving party, but rather to the other side. This criminal liability question, there's no record evidence that establishes that it, in fact, treats criminal liability. There's nothing that demonstrates or establishes that criminal liability was a determining factor in a decision to terminate. Oh, and there's this argument that Culver could have included in his reasoning what it looked like on behalf of the union. That, again, is a jury argument. Same thing. And I'm using counsel's words to the best of my recollection. He could have had this feeling or belief or something that because it harmed the image that was supportable. The evidence is not there. Now, sure, they can argue that, and he can get up and testify, and I can cross-examine him on what he did and what he said and that kind of thing, but it's not in the record. It's not something that this Supreme Court had the right to rely upon in this case. Thank you very much. Thank you, counsel. Roy v. Laborers Local 737 is submitted. And this session of the court is adjourned for today.
judges: WARDLAW, BRESS, BUMATAY